

**FILED**

JUN 2 2 2016

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JOSE ROMAN

No. 15 CR 526—2

Judge Harry D. Leinenweber

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant JOSE ROMAN, and his attorney, MARC E. GOTTREICH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.     The indictment in this case charges defendant with possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1) (Count 2).

3.     Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with possession of a firearm by a

convicted felon, in violation of Title 18, United States Code, Section 922(g)(1) (Count 2). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

On or about August 17, 2015, at Chicago, in the Northern District of Illinois, Eastern Division, JOSE ROMAN, previously having been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, namely, a loaded Mossberg International, model 715T, .22 caliber semiautomatic long rifle, bearing serial number EMK3992055, which firearm had traveled in interstate commerce prior to the defendant's possession of the firearm, in violation of Title 18, United States Code, Section 922(g)(1).

Specifically, on the morning of August 17, 2015, ROMAN possessed a loaded Mossberg International, model 715T, .22 caliber semiautomatic long rifle, bearing serial number EMK3992055 (the "model 715T rifle"). On that morning, ROMAN and Thaddeus Jimenez placed bags containing ammunition, including .22 caliber ammunition, into a Mercedes owned by Jimenez. Jimenez and ROMAN then got

into the Mercedes, with Jimenez driving and ROMAN seated in the passenger seat. ROMAN carried the model 715T rifle with him into the passenger compartment of the car. For several minutes, ROMAN and Jimenez drove around, with ROMAN filming their travels using his cell phone. At one point, ROMAN panned the camera down to the side of his left leg, where the model 715T rifle was propped against the center console of the vehicle, and stated he had "a chopper on deck." Later, ROMAN filmed himself patting the rifle with his left hand while saying "yes, I had got that bitch ready, one in the chamber, where they at?"

ROMAN and Jimenez, still driving through the neighborhood, encountered a man driving a white car. ROMAN yelled out to the man, "What you is? You ain't shit? Alright, this is Royals' hood, homie." After the man drove away without answering, ROMAN panned the camera back to his left hand, which was lowering the rifle while saying, "Ooh-ee, I got thirsty."

Less than one minute later, in the 3500 block of West Belle Plaine Avenue, Jimenez pulled up alongside a vehicle driven by Individual A. As Individual A got out of the car and approached the car driven by Jimenez, ROMAN continued to film the encounter from the passenger seat. Jimenez, without leaving the car, asked Individual A, "Why shouldn't I blast you right now?" Jimenez then chambered a round in a separate firearm possessed by Jimenez and pointed it at Individual A. After a brief exchange, Jimenez shot Individual A twice, as ROMAN continued to film.

After Jimenez pulled away from the scene, officers in a marked Chicago Police car began to follow Jimenez's car. The pursuing officers activated the emergency equipment on the police car in an effort to curb the car driven by Jimenez. Instead of pulling over, Jimenez drove in and out of oncoming traffic, and stopped only when his car collided with a parked car.

After the car driven by Jimenez had stopped, ROMAN got out of the car with the model 715T rifle in his hand. ROMAN then continued to flee from the pursuing Chicago Police Officers on foot, carrying the rifle. After running a short distance, ROMAN tossed the model 715T rifle into a yard and continued to flee from the police. ROMAN was apprehended several blocks away from the stop.

At the time of the charged offense, ROMAN had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. Further, ROMAN acknowledges that the model 715T rifle he possessed was not manufactured in the State of Illinois, and had therefore previously traveled in interstate commerce.

### Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

4

b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b. **Offense Level Calculations**.

i. Pursuant to Guideline § 2K2.1(a)(3)(A)(i) and 2K2.1(a)(3)(B), the base offense level is 22 because the firearm possessed by defendant was a semiautomatic firearm capable of accepting a large capacity magazine and because defendant previously sustained one prior felony conviction for a crime of violence.

5

    ii.  Pursuant to Guideline § 2K2.1(b)(6)(B), the offense level is increased by 4 levels because defendant used or possessed the firearm in connection with another felony offense, namely aggravated battery/discharge of a firearm in violation of 720 ILCS 5.0/12-3.05-E-1 and aggravated unlawful use of a weapon in violation of 720 ILCS 5.0/24-1.8-A-1.

    iii.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    iv.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts

6

now known to the government and stipulated below, defendant's criminal history points equal four and defendant's criminal history category is III:

   i. On or about April 14, 2011, defendant was convicted of reckless conduct in the Circuit Court of Cook County, Illinois, and sentenced to 6 months' supervision. Pursuant to Guideline § 4A1.2(c)(1), defendant receives zero criminal history points for this conviction.

   ii. On or about May 27, 2011, defendant was convicted of reckless conduct in the Circuit Court of Cook County, Illinois and sentenced to 6 months' conditional discharge. Pursuant to Guideline § 4A1.2(c)(1), defendant receives zero criminal history points for this conviction.

   iii. On or about June 27, 2011, defendant was convicted of reckless conduct in the Circuit Court of Cook County, Illinois and sentenced to 6 months' conditional discharge. Pursuant to Guideline § 4A1.2(c)(1), defendant receives zero criminal history points for this conviction.

   iv. On or about July 19, 2011, defendant was convicted of robbery and attempted robbery in the Circuit Court of Cook County, Illinois and sentenced to three years' incarceration. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

   v. On or about January 20, 2014, defendant was convicted of having contact with a street gang while on parole and sentenced to 20 days' incarceration. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

     d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 23, which, when combined with the anticipated criminal history category of III, results in an anticipated advisory sentencing guidelines range of 57 to 71 months' imprisonment, in addition to any supervised release and fine the Court may impose.

     e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

    10.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a

8

statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.    Each party is free to recommend whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Forfeiture

15.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property involved in or used in the offense.

16.     Defendant agrees to forfeiture of the following specific property to the United States: a Mossberg International, model 715T, .22 caliber semiautomatic long rifle, bearing serial number EMK3992055, and associated ammunition.  In doing so, defendant admits that the property described above is property involved in the offense, as alleged in the indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

17.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

18.     Defendant agrees to waive and abandon any right, title, or interest he has in the following property: a Mossberg International, model 715T, .22 caliber semiautomatic long rifle, bearing serial number EMK3992055, and associated ammunition.  Defendant understands that the government, after publication of notice to others who may have an interest in the property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or

otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

19.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture and/or abandonment carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 15 CR 526.

21.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt

beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

23.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

24.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this

14

information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

15

## Conclusion

29.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

16

32.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _6/22/16_

By _Ronald D. Wald_
ZACHARY T. FARDON
United States Attorney

_Jose Roman_
JOSE ROMAN
Defendant

KATRHYN E. MALIZIA
Assistant U.S. Attorney

MARC E. GOTTREICH
Attorney for Defendant

17